IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOVITA F., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | No. 3:17-CV-945-L (BT) |
| § | |
| NANCY A. BERRYHILL, § | |
| § | |
| Defendant. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Jovita F.[1] brings this action for judicial review of a final decision by the Commissioner of the Social Security Administration denying her claims for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act pursuant to 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision should be REVERSED, and this case should be REMANDED for further administrative proceedings consistent with these Findings, Conclusions, and Recommendation.

## Background

Plaintiff alleges that she is disabled due to a variety of ailments including right shoulder surgery and carpal tunnel in her right hand. *See* Tr. 53. After

---

[1] Pursuant to the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

1

Plaintiff's application was denied initially and upon reconsideration, a hearing was held on March 4, 2016 in Dallas, Texas, before an Administrative Law Judge (the "ALJ"). *See* Tr. 29. Plaintiff was 57 years old at the time of the hearing. *See* Tr. 29 & 53. Plaintiff has a fifth grade education and has not engaged in substantial gainful activity since her alleged onset date of April 10, 2014. *See* Tr. 15, 54, 259.

The ALJ issued a decision finding that Plaintiff has not been under a disability within the meaning of the Social Security Act from the alleged onset date through the date of the decision on April 27, 2016. *See* Tr. 21. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018 for Title II purposes. *See* Tr. 14. The ALJ also found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018 for widow's benefits. *See* Tr. 15.

The ALJ determined that Plaintiff had the following severe impairments: depression, anxiety, status post right carpal tunnel release, status post right shoulder arthroscopy with bursectomy and decompression, and lumbar and cervical degenerative disc disease. *See* Tr. 15. The ALJ also determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, App. 1. *See* Tr. 15.

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for the following: (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and walk for six hours in an eight hour workday; (3) sit for six hours in an eight hour workday; (4) occasionally climb ladders, ropes, and scaffolds; (5) occasionally stoop and crouch; (6) occasionally push and/or pull with her right upper extremity; and (7) occasionally reach overhead with her right upper extremity. *See* Tr. 17. The ALJ also determined that reading and writing in English could not be a requirement of the job duties that Plaintiff performs. *See* Tr. 17. However, the ALJ determined that Plaintiff was able to understand, remember, and carry out simple instructions and attend to such instructions during the course of an eight hour workday. *See* Tr. 17.

Based partly on the testimony of the vocational expert and by comparing Plaintiff's RFC with the physical and mental demands of Plaintiff's past relevant work as a bakery worker (classified under DOT Code 920.587-018 as unskilled medium work with a SVP of 2), the ALJ found that Plaintiff could perform this work as it is actually and generally performed. *See* Tr. 20. The ALJ noted that Plaintiff performed this position from November of 2005 through December of 2010, and that Plaintiff performed this work for a duration sufficient for her to adequately learn how to correctly perform the work. *See* Tr. 20.

Plaintiff appealed the ALJ's decision to the Appeals Council, and the Appeals Council affirmed the ALJ's decision. *See* Tr. 1. Plaintiff then filed this action in

3

federal district court. *See* Compl. [ECF No. 1]. Plaintiff appeals the Commissioner's final decision on the following grounds:

(1) the ALJ failed to apply the correct legal standard when deciding Plaintiff's severe impairments at step 2 of the sequential analysis;

(2) the ALJ's RFC is not based on substantial evidence; and

(3) the ALJ failed to consider the subsection 404.1527 and 416.927 factors before declining to give weight to Plaintiff's treating specialist's opinion.

*See* Pl.'s Br. 1 [ECF No. 14].

## Legal Standards

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are that:

(1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;

4

(2) an individual who does not have a "severe impairment" will not be found to be disabled;

(3) an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

(4) if an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" will be made; and

(5) if an individual's impairment precludes the individual from performing the work the individual has done in the past, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); 20 C.F.R. § 404.1520(b)-(f)). The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at step five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564.  Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standards were utilized.  *Greenspan*, 38 F.3d at 236 (citing 42

U.S.C. §§ 405(g), 1383(c)(3)). An "ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ." *Corpany v. Colvin*, 2014 WL 1255316, at *9 (N.D. Tex. Mar. 26, 2014) (citing *Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009)). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does "not reweigh the evidence, try the issues *de novo*, or substitute" its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)); *see also Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("That [the ALJ] did not follow formalistic rules in her articulation compromises no aspect of fairness or accuracy that her process is designed to ensure."). "Procedural errors affect the

6

substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Wilder*, 2014 WL 2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Id.* (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

## Analysis

Among Plaintiff's arguments is one that requires remand. Plaintiff argues that the ALJ rejected the Medical Assessment of Ability to Do Work-Related Activities (Mental) completed by her treating psychiatrist, Dr. Ikechukwu R. Ofomata, even though there is no controverting medical opinion in the record, and without conducting the necessary analysis under 20 C.F.R. §§ 404.1527(c), 416.927.[2] *See* Pl.'s Br. 8, 18; Reply 4-5; Tr. 1088-90. In this case, the March 3,

---

[2] Sections 404.1527(c) and 416.927(c) provide, in relevant part:

(c)  How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

    (1)  Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

    (2)  Treatment relationship. Generally, we give more weight to opinions from your treating sources . . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.
        (i)  Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's

7

2016 Medical Assessment by Dr. Ofomata raises questions as to the ALJ's RFC finding that "[f]rom a mental standpoint, the claimant is able to understand, remember and carry out simple instructions and attend to those instructions over the course of an 8-hour day." *See* Tr. 17. Dr. Ofomata found that Plaintiff had a substantial loss in her ability to: (1) apply commonsense understanding to carry out detailed but uninvolved written or oral instructions; (2) demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances; (3) maintain concentration for an extended period of two hours; (4) maintain attention/stay on task for an extended period of two hours; (5) perform at a consistent pace without an unreasonable number and length of

---

        medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

    (ii)    Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.

(2)    Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.

(3)    Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(4)    Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6)    Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c).

rest periods/breaks; (6) make simple work-related decisions; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (9) behave in an emotionally stable manner; (10) respond appropriately to changes in a routine work setting; and (11) finish a normal work week without interruption from psychologically based symptoms. *See* Tr. 1088-89. Dr. Ofomata also determined that Plaintiff had an extreme loss in her ability to cope with normal work stress (even those inherent in low stress jobs) without exacerbating pathologically based symptoms. *See* Tr. 1089. Dr. Ofomata further concluded that Plaintiff would miss more than 4 days of work per month. *See* Tr. 1090.

The Commissioner argues that the ALJ was not required to conduct an analysis of the factors set forth in 20 C.F.R. §§ 404.1527 & 416.927 because the record does not reflect that Dr. Ofomata treated Plaintiff. *See* Resp. 7 [ECF No. 16]. The Commissioner further argues that the ALJ provided reasons for rejecting Dr. Ofomata's opinion: (1) the record reflects that Plaintiff was not compliant with her mental health treatment, and (2) the ALJ recognized that medication effectively stabilized Plaintiff's symptoms. *See* Resp. 7.

As Plaintiff responds, however, the ALJ did not reject Dr. Ofomata's Medical Assessment on the basis that there was no evidence that he treated Plaintiff. *See* Reply 5 [ECF No. 18]. Rather, the ALJ stated that "[g]iven the

9

inconsistencies between Dr. Ofomata's opinion and the claimant's mental health treatment records, his opinion is given little weight." *Se*e Tr. 20. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Knipe v. Heckler*, 755 F.2d 141, 149 n.16 (10th Cir. 1985); *Dong Sik Kwon v. I.N.S.*, 646 F.2d 909, 916 (5th Cir. 1981)). "The Commissioner's post-hoc arguments cannot remedy the ALJ's failure to support his decision with substantial evidence." *Persley v. Commissioner*, 2011 WL 4058985, at *4 (N.D. Tex. Aug. 22, 2011) (citing *Newton*, 209 F.3d at 454).

Additionally, the record establishes that Dr. Ofomata was Plaintiff's attending physician. Plaintiff was under the care of Dr. Ofomata on June 13, 2013, and Dr. Ofomata is listed as Plaintiff's "Attend/Clinician" in the March 3, 2016 Medical Assessment of Ability to Do Work-Related Activities (Mental). *See* Tr. 1176, 1295. In the Medical Assessment, Dr. Ofomata was asked to "check all the clinical signs of mental illness this patient has manifested *during treatment* at your facility, which contributed to your assessment of the severity of the patient's condition[.]" *See* Tr. 1089 (emphasis added). In response, Dr. Ofomata checked that Plaintiff exhibited the clinical signs of crying spells, anhedonia, appetite disturbance, sleep disturbance, low energy, psychomotor agitation/retardation, difficulty thinking/confusion, and chronic depression. *See* Tr. 1089. The Medical Assessment also asked Dr. Ofomata whether "the patient

10

[has] been limited to approximately the same extent you have indicated in your answers to this form since he/she *began treatment* at your facilility?" to which Dr. Ofomata responded "yes." *See* Tr. 1090 (emphasis added). Therefore, the Medical Assessment reflects that Dr. Ofomata treated Plaintiff.

According to Fifth Circuit precedent:

> [O]pinions from treating physicians are generally entitled to significant weight. This Court has "long held that 'ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability.'" In *Newton v. Apfel*, this Court concluded that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[]."

*Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017) (quoting *Newton*, 209 F.3d at 453). *See also Yearout v. Astrue*, 2010 WL 4860784, at *10 (N.D. Tex. Oct. 26, 2010) ("The ALJ here did not find as a factual matter, and based on competing first-hand evidence, that another doctor's opinion was more well-founded than Dr. Berger's opinion, or weigh Dr. Berger's opinion on disability against the medical opinion of other physicians who had treated or examined Plaintiff and had specific medical bases for a contrary opinion. . . . The ALJ was therefore required to perform the six-factor analysis outlined in 20 C.F.R. § 404.1527[] before rejecting Dr. Berger's opinion. . . . [T]he case must be

11

remanded to the Commissioner for reconsideration of Dr. Berger's opinion under the factors set out in 20 C.F.R. § 1527[].").

There is no controverting medical opinion as to Plaintiff's mental condition in the record. Therefore, the ALJ was required to conduct an analysis of the factors set forth in 20 C.F.R. §§ 404.1527, 416.927 prior to rejecting Dr. Ofomata's opinion. The Court is unable to say that the ALJ would have come to the same conclusion had he conducted a detailed analysis of these factors. *See* Because there is a realistic chance that the ALJ could have come to a different result, the Court concludes that the ALJ's decision is not supported by substantial evidence. *See id.* Therefore, the final decision of the Commissioner should be reversed, and this case should be remanded for further administrative proceedings. *See Gittens v. Astrue*, 2008 WL 631215, at *5 (N.D. Tex. Feb. 29, 2008) (Lindsay, J.) ("The court [ ] finds that the ALJ had a duty to explain why these medical opinions from a treating physician were rejected and to conduct the analysis required by 20 C.F.R. § 404.1527[(c)]. . . . Accordingly, the court rejects the magistrate judge's conclusion that remand is not warranted, reverses the final decision of the Commissioner denying disability benefits, and remands this case to the Commissioner for further proceedings consistent with this order."). Because the Court finds that the ALJ's decision should be remanded on this ground, the Court pretermits consideration of Plaintiff's alternative arguments as she can raise them before the ALJ on remand. *See* 20 C.F.R. §

12

404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

## Recommendation

The final decision of the Commissioner should be REVERSED, and this case should be REMANDED for further proceedings consistent with these Findings, Conclusions, and Recommendation.

SO RECOMMENDED.

August 24, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).